UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARK A. SMITHERMAN, | Case No. 2:20-CV-579 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Mark Smitherman's ("plaintiff") motion for partial summary judgment. (ECF No. 44). Defendant PlusFour, Inc. ("defendant") filed a response (ECF No. 48), to which plaintiff replied (ECF No. 50).

Also before the court is plaintiff's motion to strike (ECF No. 51) defendant's response to plaintiff's motion for partial summary judgment (ECF No. 48). Defendant filed a response (ECF No. 53), to which plaintiff replied (ECF No. 54).

Also before the court is defendant's motion for summary judgment. (ECF No. 45). Plaintiff filed a response (ECF No. 47), to which defendant replied (ECF No. 52).

**I.     BACKGROUND**

The instant action arises from a dispute under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Plaintiff alleges that defendant furnished inaccurate information to credit reporting agencies ("CRAs") and that defendant did not reasonably investigate the matter once defendant was notified by the CRAs of the dispute. (*See* ECF No. 1). This resulted in alleged harm to plaintiff's credit as well as emotional and mental distress due to plaintiff's prolonged pursuit to resolve this alleged unpaid collections debt over several years. (*Id.*).

**James C. Mahan**
**U.S. District Judge**

Plaintiff filed suit in federal court on March 24, 2020, under this court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. Codefendants Experian Information Solutions, Inc. and Equifax Information Services, LLC were dismissed from the case with prejudice in November 2020. (ECF Nos. 42; 43). Codefendant Trans Union, LLC was also dismissed with prejudice in January 2021. (ECF No. 46).

Discovery concluded on December 3, 2020. (ECF No. 39). Plaintiff now moves for partial summary judgment (ECF No. 44) and defendant moves for summary judgment (ECF No. 45). Plaintiff also now moves to strike defendant's response to the motion for partial summary judgment. (ECF No. 51).

### A. Undisputed facts

The court finds the following facts to be undisputed. On or about February 29, 2016, (the "date of service"), Plaintiff received radiology services at Desert Radiology in Las Vegas, Nevada. (ECF Nos. 44 at 2; 45 at 3 ¶ 1). Zotec Partners, LLC ("Zotec") was Desert Radiology's billing company during the relevant time period, (ECF Nos. 44 at 2; 48 at 6:19–20), and defendant handled Desert Radiology's collection accounts (ECF No. 45 at 3 ¶ 2). In or about October 2016, defendant sent plaintiff a letter regarding outstanding debt related to the services performed on the date of service at Desert Radiology. (ECF Nos. 44 at 2; 45 at 3 ¶ 4).

Plaintiff communicated with defendant in 2018 and 2019 via telephone to inform it that Desert Radiology had billed the wrong insurance policy. (ECF Nos. 1 at 5 ¶ 7; 45 at 4). In response, defendant requested that plaintiff mail to defendant the explanation of benefits ("EOB") from his insurance company to confirm. (ECF Nos. 44-17 ¶ 10; 45 at 4 ¶ 11).[1]

On or about December 13, 2019, plaintiff sent three letters to each of the CRAs (Experian, Equifax, and TransUnion) asserting that the outstanding debt owed for medical services received from Desert Radiology was an error, that it was errantly billed to the wrong insurance, and that once it was properly billed to the correct insurance his insurance policy had

---

[1] The timing surrounding receipt of plaintiff's EOB is disputed. Plaintiff alleges to have sent the EOB via certified mail (*See* ECF 44-17 ¶ 9), but defendant contends that it only accepts "standard mail," so the EOB would have been rejected and was purportedly never received until November 2020, approximately one month before close of discovery (*See* ECF Nos. 45 at 4 ¶ 14; 52 at 4:5–6).

paid the bill in full.  (ECF No. 44-12).  On or about February 6, 2020, defendant received a "written verification request" from the CRAs to confirm or correct plaintiff's outstanding debt.  (ECF No. 45 at 4 ¶ 15).  At least one of those notices from the CRAs included plaintiff's dispute letter.  (ECF No. 44-2 at 21–22).

Defendant accessed Desert Radiology's internal online billing platform to verify the balance on plaintiff's account and responded to the CRAs' written verification requests indicating that the debt was indeed still outstanding.   (ECF No. 45 at 4–5).

Shortly following plaintiff's filing of this lawsuit on March 24, 2020, plaintiff's account was removed from collections and the debt was no longer included on plaintiff's credit reports.  (ECF Nos. 44 at 6; 44-2 at 65:12–15; 45 at 5 ¶ 23).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

**James C. Mahan**
**U.S. District Judge**

- 3 -

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

## III. DISCUSSION

### A. Motion to strike

As an initial matter, the court addresses plaintiff's motion to strike portions of defendant's response (ECF No. 48) to his motion for partial summary judgment. (ECF No. 54). Specifically, plaintiff moves the court to strike Exhibits J and K (ECF Nos. 48-11; 48-12), which consist of internal documents furnished by defendant that are being used to evince what defendant knew and when as it pertains to plaintiff's inaccurate collections account. Plaintiff also moves the court to strike paragraphs 2–12 of Exhibit A, the declaration of Mitchell Gutherie, Operations Manager for defendant (ECF No. 48-2), which explicitly reference Exhibits J and K. All exhibits were attached as part of defendant's response to plaintiff's motion for partial summary judgment. (ECF No. 48).

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires parties to provide the other parties "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control *and may use to support its claims or defenses*…" (emphasis added). Parties also must "supplement or correct its disclosures or responses...in a timely manner if that party learns in some material respect the disclosure or response is incomplete or incorrect." FED. R. CIV. P. 26(e)(1).

Rule 37(c)(1) gives teeth to these requirements by forbidding the use of information not properly disclosed by Rule 26(a) as "evidence on a motion, at a hearing, or at a trial." FED. R. CIV. P. 37(c)(1). The Ninth Circuit gives district courts "particularly wide latitude" to issue sanctions under Rule 37 if a party does not comply with Rule 26 disclosure requirements. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Preclusion is an appropriate sanction for failing to fulfill the required disclosure requirements. *Yeti*, 259 F.3d at 1106.

The exceptions to Rule 26 disclosure requirements are if the failure to disclose was "substantially justified or [] harmless." FED. R. CIV. P. 37(c)(1). The burden is on the party

James C. Mahan
U.S. District Judge

- 5 -

facing sanctions to show that its failure to comply with Rule 26 was either justified or harmless. *Yeti*, 259 F.3d at 1107.

Plaintiff contends that defendant should have known about the relevance of Exhibits J and K and that defendant's untimely disclosure was neither substantially justified nor harmless. (*See* ECF No. 54). Plaintiff claims that defendant should have known to disclose the information by November 2, 2020, at the latest (*Id.* at 7), when Tara Rodriguez, Desert Radiology's Revenue Cycle Manager, was deposed and it was revealed that Zotec communicated with defendant on March 31, 2017, about removing plaintiff's account from collections (ECF No. 44-4 at 35).

Defendant argues that the later-disclosed information contained in Exhibits J and K was "wholly irrelevant" until the deposition of Dean Burger, Executive Vice President of Legal and Finance at Zotec, on December 2, 2020—one day prior to the close of discovery. (ECF No. 53 at 6). Defendant asserts that as soon as Mr. Burger's deposition made clear that an email was sent from Zotec to defendant indicating that plaintiff's account should be removed from collections, "it diligently worked to find related documents and evidence and disclosed [Exhibits J and K]" within three weeks, on December 24, 2020—21 days after the close of discovery. (*Id.*).

The court finds that defendant's belated introduction of this internal information was a violation of Rule 26 disclosure requirements. Exhibit J includes internal emails and HR records proving that "Kim"—the alias being used for defendant's Zotec liaison—was on sick leave during the relevant time period (ECF No. 48-11); Exhibit K includes internal emails regarding a meeting with Desert Radiology and Zotec to discuss the difficulty in interpreting the codes from the regular reports it received from Zotec (ECF No. 48-12).

In the court's view, all this information is relevant to defendant's defense—to wit, whether defendant *knew*, or had received communications regarding plaintiff's account being sent to collections in error—and whether defendant knew or should have known about its relevance prior to December 2, 2020. For instance, defendant knew Zotec was Desert Radiology's billing company (ECF No. 48 at 6:19–20) and it suspends belief that defendant was ignorant as to the relevance of communications *from* Zotec regarding Desert Radiology accounts sent around the relevant time period.

**James C. Mahan**
**U.S. District Judge**

- 6 -

Post-discovery, defendant asserts the defenses that it never received the emails from Zotec since its Zotec liaison was on medical leave, and that the emails were "indecipherable" and thus impossible to provide notice of relevance to the case. (ECF No. 53). Accordingly, defendant attached Exhibits J and K to its response to plaintiff's motion for partial summary judgment.

The court finds this is too little, too late. Rule 26 requires disclosures of documents a party may use to support its "defense" *prior* to the discovery deadline. FED. R. CIV. P. 26(a)(1)(ii). Such proper disclosure(s) would have allowed plaintiff sufficient time to analyze and rebut the information.

Even assuming, *arguendo*, that defendant did not violate Rule 26(a) at the beginning of discovery, defendant violated Rule 26(e)'s continual disclosure responsibility following the November 2, 2020, deposition of Ms. Rodriguez. During that deposition, Ms. Rodriguez identified, under oath, that communications from Zotec were sent to defendant indicating that plaintiff's account should be removed from collections. (ECF No. 44-4 at 35–39). The deposition transcript specifically confirms the date of March 31, 2017, of one of the emails, that it was sent from "Donna," a confirmed employee of Zotec, that it was sent to defendant, and that it included an Excel spreadsheet with the charge "Remove—sent in error" in reference to plaintiff's account. (*Id.*).

Defense counsel was present for this deposition and this testimony offered sufficient particularity to place defendant on notice to seek out and disclose any evidence contesting such purported facts to comply with Rule 26(e). Indeed, defendant did just that following the December 2, 2020, deposition of Mr. Burger where Mr. Burger's testimony similarly revealed the March 31, 2017, Zotec email.[2] (ECF No. 44-3 at 15).

---

[2] Notably, Mr. Burger testified that he and the personnel at Zotec discovered this email and others through a simple search of internal emails sent or received between PlusFour (defendant) and Zotec. (ECF No. 44-3 at 10). This relatively straightforward approach to unearthing these emails begs the question as to why defendant was not able to perform the same search within its own email system to find these emails prior to this point in the discovery process.

**James C. Mahan**
**U.S. District Judge**

- 7 -

Defendant should have similarly, and expeditiously, disclosed the internal communications following Ms. Rodriguez's deposition one month prior. Not doing so was either unintentional and negligent, or intentional and strategic. Either way, the court does not find any substantial justification for withholding the information until 21 days after the close of discovery.

Furthermore, the court does not find defendant's failure to disclose harmless. Defendant claims that the late disclosures were harmless and "[do] not impact the case as a whole" while simultaneously using the information as prime evidence to rebut plaintiff's contention that defendant had sufficient notice to remove plaintiff's account from collections. (ECF No. 53 at 8). This contradictory claim is unpersuasive.

Finally, and most importantly, plaintiff was significantly prejudiced by defendant's failure to disclose. Plaintiff was not given a full and fair opportunity to conduct necessary investigation and discovery on the merits of the defense defendant now pursues. Had the disclosures been timely, plaintiff would have had the opportunity to develop rebuttal evidence surrounding Kim's medical leave, defendant's procedures in managing inactive email accounts, and/or the alleged unintelligibility of the emails from Zotec.

Accordingly, the court finds that defendant has not met its burden to show that its failure to disclose was either substantially justified or harmless. Therefore, the court grants plaintiff's motion to strike as to Exhibits J and K (ECF Nos. 48-11; 48-12).

As to plaintiff's request that the court strike paragraphs 2–12 of Exhibit A, Mr. Gutherie's declaration (ECF No. 48-2), which reference Exhibits J and K (ECF Nos. 48-11; 48-12), the court elects to leave this declaration intact. While there are other references to Exhibits J and K throughout defendant's response to plaintiff's motion for partial summary judgment (ECF No. 48), plaintiff does not ask the court to strike those portions as well. Rather than order a patchwork of stricken portions of the record, the court elects to only strike the underlying Exhibits J and K in order to allow the court to decide the case more fully on the merits at this summary judgment stage.

The court now turns to the motions for summary judgment.

James C. Mahan
U.S. District Judge

## B. Plaintiff's motion for partial summary judgment

Plaintiff moves this court to enter partial summary judgment against defendant on the issue of liability under the FCRA. (ECF No. 44 at 1). The crux of this summary judgment dispute rests on the reasonableness of defendant's investigation into plaintiff's disputed outstanding debt. In other words, what did defendant know, when did it know, and did it comply with the requirements of the FCRA?

### 1. Liability under the Fair Credit Reporting Act

"Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)). In essence, the FCRA was the federal government's effort to address "concern over abuses in the credit reporting industry." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). It was crafted to "protect consumers from the transmission of inaccurate information about them and establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond*, 45 F.3d at 1333. Therefore, the Ninth Circuit "appl[ies] a liberal construction in favor of consumers when interpreting the FCRA." *Shaw*, 891 F.3d at 755 (citing *Guimond*, 45 F.3d at 1333).

The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements. S*ee Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002) ("That…Congress created a private right of action for consumers [under the FCRA] cannot be doubted. That right is to sue for violation of any requirement 'imposed with respect to any consumer.'"). The FCRA limits this private right of action, however, to claims arising under § 1681s-2(b), the duties triggered for furnishers of credit information upon notice of a dispute from a CRA.[3] In relevant part, furnishers of information are

---

[3] The full statutory duties of furnishers of information upon notice of dispute is as follows:

required to "conduct an investigation with respect to the disputed information" once it receives a notice of dispute from the CRAs.[4]  15 U.S.C. § 1681s-2(b)(1)(A).

The Ninth Circuit has held that an "investigation" required under the FCRA must be "reasonable" and that the term "investigation on its own force implies a fairly searching inquiry." *Gorman*, 584 F.3d at 1155–56.

The Ninth Circuit has also held that "summary judgment is generally an inappropriate way to decide questions of reasonableness because 'the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment.' " *In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 n.12 (1976)).  However, the court clarifies that summary judgment is

---

(1) In general. After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>> (i) modify that item of information;
>> (ii) delete that item of information; or
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

[4] The statute uses the term "consumer reporting agencies" while the parties use the term "*credit* reporting agencies" in their pleadings and briefs.  The statute defines consumer reporting agencies as "…any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).  The most commonly known agencies in this space are Experian, Equifax, and Trans Union.  Since it appears "consumer reporting agencies" and "credit reporting agencies"—both abbreviated as "CRAs"—are synonymous with each other, and since this suit no longer involves any of the CRAs originally named in the suit, the court uses the acronym CRA to represent both terms interchangeably for purposes of this order.

**James C. Mahan**
**U.S. District Judge**

"not precluded altogether on questions of reasonableness." *Gorman*, 584 F.3d at 1157. It is appropriate "when only one conclusion about the conduct's reasonableness is possible." *Id*.

### 2. *Defendant is not liable for furnishing inaccurate information under the FCRA*

As an initial matter, plaintiff argues that defendant's furnishing of inaccurate information was a violation of the FCRA's "flat prohibition" against providing inaccurate information to CRAs in § 1681s-2(a)(1)(A). (ECF No. 44 at 10) (citation omitted). However, Congress explicitly denied a private cause of action for any violations under § 1681s-2(a). *See* 15 U.S.C. § 1681s-2(c). Thus, the court summarily denies any summary judgment as to liability under § 1681s-2(a) and only analyzes summary judgment as to willful and negligent liability under §§ 1681n and 1681o, respectively.

### 3. *Defendant is negligently liable for noncompliance under the FCRA*

As previously stated, the FCRA statute requires furnishers of credit information to "conduct an investigation with respect to the disputed information" when such furnisher receives a notice of dispute from the CRAs. 15 U.S.C. § 1681s-2(b)(1)(A). Defendant admits to receiving such notice on or about February 6, 2020, including at least one of plaintiff's three dispute letters that were sent to the various CRAs. (*See* ECF No. 45 at 4 ¶ 15). Plaintiff's dispute letter indicated that Desert Radiology had billed the wrong insurance company, that Desert Radiology corrected the mistake, that the bill had now been paid in full, and that the debt should be removed from his credit report. (*See* ECF No. 44-13).

In response, defendant claims that it searched the Desert Radiology billing portal, which it had access to, sometime between February 5, 2020, and February 25, 2020, and confirmed that the insurance claim was still showing as denied and that plaintiff's debt remained outstanding. (ECF No. 45 at 5). Defendant strongly contends that this was a sufficiently reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A). The court disagrees.

From the record, it appears that Desert Radiology's billing portal records were inaccurate as to plaintiff's account, which is unfortunately what defendant primarily relied on to investigate the dispute. (*See* ECF No. 44-2 at 100–01). Defendant admits that it never spoke to Desert Radiology directly to verify the information. (*Id.*).

**James C. Mahan**
**U.S. District Judge**

- 11 -

Plaintiff contends that defendant inappropriately relied on Desert Radiology's billing portal to verify information since it was instructed in 2017, by Zotec, *not* to access Desert Radiology's billing portal. (ECF No. 44-3 at 26:1-3). Defendant responds, however, that this policy was just for "privacy reasons," was problematic in its implementation, and subsequently led to Desert Radiology allegedly "…direct[ing] [defendant] to conduct investigations of disputed accounts by utilizing the [Desert Radiology] [b]illing [p]latform in approximately December 2017." (ECF Nos. 48 at 13; 48-2 ¶ 15). Even considering all the disputed facts in favor of the defendant, one significant inquiry remains: why did defendant not remove plaintiff's account from collections when defendant received two emails from Zotec containing an "agency recall report"—a commonly known phrase in the industry—that, in at least one report, explicitly included a note in all caps: "REMOVE-SENT IN ERROR" entered on the line corresponding to plaintiff's account?

Defendant avers that the recall information was never received because defendant's Zotec liaison during the relevant time period was out on medical leave and even if it did receive it, it was poorly presented. (*Id.*). This reasoning falls flat.

The court finds that defendant's snafu involving personnel issues and email account mismanagement constitutes negligence in failing to comply with the FCRA's investigation requirement. Defendant's negligence in not removing plaintiff's account from collections resulted in the precise type of harm to consumers that Congress was attempting to prevent with the passage of the FCRA—that is, delay in resolving disputed information on a consumer's credit report, ultimately harming a consumer's credit.

Furthermore, while it is (almost always) possible to be clearer in communications— especially in matters of complex financial transactions such as this—the court does not find the presentation of information in this recall report "difficult to understand," as defendant contends. (ECF No. 48 at 12). In fact, far from it. A layman outside of the credit reporting industry could look at the self-explanatory words "REMOVE-SENT IN ERROR" attached to a specific

collections account and sufficiently glean that the account was sent in error and needed to be removed.[5]

What is more, defendant conceded that it fully expected to receive weekly emails with a list of accounts needing to be closed, and yet did not manage its internal email accounts appropriately to continue receiving such reports from Zotec. (ECF No. 44-2 at 41).

This leaves the court with only one conclusion: that defendant's conduct was negligent and unreasonable as a matter of law under the investigation requirements pursuant to the FCRA. Even if the defendant did not *actually* know that plaintiff's account should have been removed from collections when it began its investigation after receiving notice from the CRAs, by all accounts it *should* have known.

Had defendant engaged in a reasonable investigation based on the information it *should* have known, this suit likely would have never materialized since defendant would have only needed to search its internal records regarding accounts needing to be closed and resolved the dispute accordingly.[6]

Defendant makes much of the fact that plaintiff did not send documentation proving the satisfaction of the underlying debt (*e.g.* an explanation of benefits ("EOB") or other documentation from his health insurance). (ECF No. 45 at 5 ¶ 20). While there is some dispute surrounding the timely receipt of said EOB,[7] it is no matter. The FCRA does not specifically require consumers to provide documentation to furnishers like defendant in order to resolve a dispute. *See* 15 U.S.C. § 1681s-2(b)(1)(A)–(B).

---

[5] The second Zotec email, dated September 10, 2018, containing similar information, and which was sent to Rick Bennett—one of defendant's employees who was *not* on sick leave—was potentially more nebulous when viewed in a light most favorable to defendant. (ECF No. 44-6). The body of the email simply said, "Please review," and the case note for plaintiff's account line in the spreadsheet stated: "pls rev pt is still being contact by collect, THE AUTHORIZATION NUMBER IS MISSING…" (*Id.* at 7). However, because the court finds that the recall information for plaintiff's account contained in the March 31, 2017, email was sufficiently clear and should have been reviewed by defendant under a reasonable FCRA investigation, the court's analysis of the September 10, 2018, email is moot.

[6] To be clear, the court is not commenting on the extent of what a "reasonable investigation" entails. The Ninth Circuit has provided sufficient clarity on that front. *See supra* Part III.B.1.

[7] *See supra* note 1.

As the court explained earlier, once a furnisher of information (like defendant here) receives a proper dispute from the CRAs pursuant to 15 U.S.C. § 1681i(a)(1), it is required to "conduct an investigation with respect to the disputed information…[and] review all relevant information provided by the consumer reporting agency." 15 U.S.C. 1681s-2(b)(1)(A)–(B).

Contrary to defendant's assertion, the statute does not place the burden on the consumer to provide affirmative evidence to resolve the disputed information (*e.g.,* an EOB); it only requires that consumers provide notice containing "sufficient information to investigate the disputed information." *See* 15 U.S.C. 1681i(a).

As such, defendant failed in its review of all relevant information provided by the CRA, which included plaintiff's dispute letter sufficiently detailing that his account was sent to collections in error. (ECF No. 44-12). This would have triggered a reasonable furnisher of credit information like defendant to at least investigate its internal records to ensure that an account was not in collections by mistake. Defendant did no such thing because it negligently managed its internal receipt of vital information concerning consumer accounts, including for plaintiff's account.

In sum, no rational trier of fact could look at the record before the court and not find the defendant negligent in its duties under the FCRA. Even construing all disputed factual issues in favor of defendant—and when applying a "liberal construction in favor of consumers when interpreting the FCRA," *Shaw*, 891 F.3d at 755 (citing *Guimond*, 45 F.3d at 1333)—the court holds that plaintiff has satisfied his evidentiary burden at this summary judgment stage and that defendant has not established a genuine issue of material fact as it relates to its civil liability for "negligent noncompliance" under 15 U.S.C. § 1681o(a).[8]

The court holds that plaintiff has not, however, based on the same facts, met his burden as it relates to defendant's civil liability for "willful noncompliance" of the FCRA under 15 U.S.C. § 1681n(a).

---

[8] The court recognizes that this case could be distilled down to a simple miscommunication of systems. However, the court finds that Congress envisioned such a scenario when it provided a remedy for "negligent noncompliance" with the FCRA. See 15 U.S.C. § 1681o ("Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer…").

James C. Mahan
U.S. District Judge

- 14 -

Accordingly, the court grants in part and denies in part plaintiff's motion for partial summary judgment (ECF No. 44).

### 4. Proof of actual damages

Finally, defendant argues that in the event the court finds that defendant violated the FCRA, plaintiff has not shown a "scintilla" of evidence to establish any actual damages, including emotional distress. (ECF No. 52 at 11). However, civil liability for negligent noncompliance under 15 U.S.C. § 1681o(a) does not require proof of actual damages. Even if plaintiff cannot prove any actual damages sustained as a result of defendant's failure, plaintiff is still entitled to recover reasonable attorney's fees. 15 U.S.C. § 1681o(a)(2) ("Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—(1) any actual damages sustained by the consumer as a result of the failure; **and (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."**) (emphasis added).

Regardless, plaintiff only moves the court for partial summary judgment on the question of liability under the FCRA, (ECF No. 44 at 1), and the court finds that a genuine issue of material fact exists as it relates to the question of actual damages. Hence, the court makes no determination as to actual damages at this summary judgment stage.

### C. Defendant's motion for summary judgment

For the same reasons and analysis explicated in Part III.B, *supra*, the court denies defendant's motion for summary judgment.

## IV. CONCLUSION

Accordingly, and pursuant to the foregoing,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for partial summary judgment (ECF No. 44) be, and the same hereby is, GRANTED in part, and DENIED in part. Plaintiff's motion as it relates to defendant's civil liability for furnishing inaccurate information to credit reporting agencies pursuant to 15 U.S.C. § 1681s-2(a)(1)(A) is DENIED. Plaintiff's motion as it relates to defendant's civil liability for negligent

1  noncompliance of the FCRA pursuant to 15 U.S.C. § 1681o(a) is GRANTED.  Plaintiff's motion
2  as it relates to defendant's civil liability for willful noncompliance of the FCRA pursuant to 15
3  U.S.C. § 1681n(a) is DENIED.

4      IT IS FURTHER ORDERED that defendant's motion for summary judgment (ECF No.
5  45), be, and the same hereby is, DENIED.

6      IT IS FURTHER ORDERED that plaintiff's motion to strike (ECF No. 51) be, and the
7  same hereby is, GRANTED as to Exhibits J and K of defendant's response to plaintiff's motion
8  for partial summary judgment (ECF Nos. 48-11 and 48-12), and DENIED as to paragraphs 2–12
9  of Exhibit A of defendant's response to plaintiff's motion for partial summary judgment (ECF
10 No. 48-2).

11     The clerk is instructed to strike ECF No. 48-11 and ECF No. 48-12 from the record.

12     DATED January 25, 2022.

                                        _____
                                        UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**